UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| SUBWAY INTERNATIONAL B.V., : <br>     Plaintiff : <br> : <br> v. : <br> : <br> ORNELA CERE : <br>     Defendant. : | Case No.: 3:10-cv-01713 (PCD) |

## RULING ON MOTIONS TO TRANSFER AND DISMISS

Defendant Ornela Cere presents this Court with two motions: (1) to transfer venue to the Supreme Court of the State of New York and (2) to dismiss this action. For the reasons stated herein, Defendant's motion to transfer [Doc. No. 45] is **denied** and the motion to dismiss [Doc. No. 62] is **granted**.

**I. BACKGROUND**

Plaintiff, Subway International B.V. ("SIBV"), an international franchisor of SUBWAY® sandwich stores, is a Netherlands limited liability corporation with a principal place of business in Amsterdam. On November 13, 2008, Plaintiff and Defendant entered into Franchise Agreement No. 45251 ("Franchise Agreement"), permitting Defendant to operate a Subway restaurant in Greece provided that Defendant pay Plaintiff weekly royalty and advertising fees out of her restaurant's gross sales. (Pl.'s Appl. to Confirm Arbitr. Award ¶¶ 5-7.) The Franchise Agreement contained a dispute resolution clause that provides in relevant part: "[t]he parties will arbitrate any Dispute the parties do not settle under the discussion procedures above, and any Dispute which this Agreement provides will be submitted directly to arbitration, except as provided in the Agreement." (Franchise Agr. ¶ 10.c.) The parties also stipulated in the Franchise

Agreement that they would arbitrate such disputes in accordance with the United Nations Commission on International Trade Regulations and Law Arbitration Rules administered by an arbitration agency, such as the International Centre for Dispute Resolution, at a hearing to be held in New York, New York. (Id.)

According to Plaintiff, at some time after the parties entered into the Franchise Agreement, Defendant's store was marked out of compliance due to several problems affecting health and safety, which triggered an automatic termination notice from Plaintiff. (Pl.'s Appl. to Confirm Arbitr. Award ¶ 6.) Defendant initially contested the compliance allegations, but then voluntarily chose to cease operating her store. (Id.)

On September 3, 2010, Plaintiff filed a Demand for Arbitration with the International Centre for Dispute Resolution, alleging that Defendant breached paragraphs 2, 5.i., 5.b and 8.b. of the Franchise Agreement by failing to pay royalty and advertising fees and by failing to comply with Plaintiff's Operations Manual. (Id. ¶ 11.) In response, Defendant filed defenses and counterclaims with the International Centre for Dispute Resolution. (Id.) The arbitration hearing took place over several days in March 2010. Upon review of all claims and defenses raised by Plaintiff and Defendant, the International Centre for Dispute Resolution issued a final award dated August 2, 2010. (Id. ¶ 12.) Plaintiff was awarded 1080.56 Euros for outstanding advertising fees and royalties and Defendant was awarded $41,600 in damages on her counterclaims. Plaintiff was ordered to pay Defendant the net amount of 40,519.44 Eros, and the parties were instructed to equally split the legal fees and costs. (Id. ¶¶ 13-14.) The arbitration award also held that the Franchise Agreement was terminated. (Id. ¶ 14.)

On September 10, 2010, Defendant filed an action in New York state court seeking to vacate the arbitration award at issue in this case.[1] (Pl.'s Opp'n to Defs.' Mot. to Dismiss at 3.) On November 30, 2010, the court granted Defendant's petition for default and directed her to settle the disposition upon notice. (Id. at 3.) On or about January 19, 2011, Defendant filed a proposed settled default order, which Plaintiff opposed. (Id.) On December 13, 2010, Plaintiff moved to vacate the default disposition and dismiss the petition to vacate the arbitration award. (Id.) Plaintiff's motion is currently pending. (Id.)

On October 28, 2010, Plaintiff filed this action, which seeks to confirm the arbitration award. Defendant now moves to transfer this case to New York state court and to dismiss this action. Because Defendant's motions to transfer and dismiss address related issues, this Court will address both motions in one ruling.

**II. DISCUSSION**

**A. Motion to Transfer**

Defendant argues that this case should be transferred to New York state court. Her primary argument in support of the motion is that the arbitration award is the product of fraud by the arbitrator and Plaintiff and that, pursuant to District of Connecticut Local Rule 83.7 ("Local Rule 83.7") and the Federal Arbitration Act ("FAA"), this Court should transfer the case to New York state court. Neither the FAA nor Local Rule 83.7 provide any support for Defendant's motion, however. The FAA, a federal statute setting forth the procedures for enforcing arbitration agreements, says nothing about transferring motions to compel arbitration from

---

[1] Given that the arbitrator ruled in Defendant's favor on two of her counterclaims and awarded her a net amount of 40,519.44 Euros, it is unclear why Defendant is seeking to vacate the award.

3

federal court to state court. Nor is Local Rule 83.7 a source of authority for transferring this case to New York state court. While the rule deals with cases transferred from one district court to another or cases remanded to state court, it merely prescribes the clerk's mailing duties in the event of a transfer or remand; it is not a source of authority for transferring or remanding cases. The only mention of state courts in Local Rule 83.7 concerns providing the appropriate state court with documents when a case has been remanded.

In her reply brief, Defendant contends that a number of other federal statutes provide authority for transferring this case to New York state court. The first statute Defendant relies on is 28 U.S.C. § 1441, which provides that a defendant may remove cases originating in state court to the "district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). Defendant's reliance on this statute is baseless; the statute provides no authority for transferring a case that originated in a district court to state court.

Defendant also argues that 28 U.S.C. §§ 1404 and 1406 provide authority for transferring this case to the New York Supreme Court. Despite her arguments to the contrary, Defendant will find no support for her transfer motion in these statutes either. Section 1404 provides federal courts with the discretionary authority to transfer a case to another federal district "[f]or the convenience of parties and witnesses, [and] in the interests of justice." 28 U.S.C. § 1404(a). The statute does not authorize federal courts to transfer cases to state courts. See Pope v. Atlantic Coast Line R. Co., 345 U.S. 379, 384 (1953) ("Section 1404(a), by its very terms, speaks to federal courts; it addresses itself only to that federal forum in which a lawsuit has been initiated; its function is to vest such a federal forum with the power to transfer a transitory cause of action to a more convenient federal court."). Similarly, § 1406 only authorizes district courts to transfer

cases to other district courts. Under the statute, district courts are permitted to either dismiss or transfer an action when venue is improper "if it be in the interests of justice," to "any district or division in which it could have been brought." 28 U.S.C. § 1406(a).

Simply put, this Court does not have the authority to transfer this case to New York state court. The motion to transfer is therefore denied.

### B. Motion to Dismiss

In support of her motion to dismiss, Defendant appears to make the following arguments: (1) Plaintiff does not have personal jurisdiction over her because of improper service of process; (2) this court does not have subject matter jurisdiction over the dispute; (3) venue is improper in the District of Connecticut; and (4) the case should be dismissed because of parallel litigation in New York state court. Because the Court finds that Plaintiff has not met its burden of showing that service was proper, it grants Defendant's motion to dismiss due to improper service of process and declines to address the remaining arguments in support of the motion to dismiss.

Defendant alleges that Plaintiff intentionally mailed the notice of the petition to confirm the arbitration award to the wrong address in Greece, and thus personal jurisdiction is lacking because she was never properly served. Plaintiff responds that Defendant has waived the personal jurisdiction defense by actively litigating this case for the past several months.

It is well-settled that lack of personal jurisdiction is a privileged defense that can be waived "by failure to assert it seasonably, by formal submission in a cause, or by submission through conduct." Neirbo Co. v. Bethlehem Shipbuilding Corp., 308 U.S. 165, 168 (1939); see also Peterson v. Highland Music, Inc., 140 F.3d 1313, 1318 (9th Cir. 1988) ("Most defenses, including the defense of lack of personal jurisdiction, may be waived as a result of the course of

5

conduct pursued by a party during litigation."). The Second Circuit has advised that a defendant can forfeit the personal jurisdiction defense arising from improper service of process even when formally raised in an answer or motion to dismiss. For instance, in Datskow v. Teledyne, Inc. Continental Products Div., 899 F.2d 1298, 1300-03 (2d Cir. 1990), the Second Circuit held that a defendant who had raised an improper service of process defense in his answer forfeited the defense after participating in a scheduling conference with a magistrate judge, during which the defendant did not mention the personal jurisdiction defense. See also Hamilton v. Atlas Turner, Inc., 197 F.3d 58, 61-62 (2d Cir. 1999) (holding that defendant that had raised personal jurisdiction defense in its answer forfeited the defense by failing to raise the defense again for four years, during which time the defendant participated in considerable pretrial activity).

To determine whether Defendant has waived the defense, it is necessary to summarize the adjudication of this case to date. Defendant's attorney filed an answer to the petition to confirm the arbitration award on November 2, 2010, which included the defense of lack of personal jurisdiction due to improper service. After filing her answer, Defendant's attorney filed several motions with this Court, including: 1) a motion for a hearing to present evidence of the "fraud and perjury" committed by Plaintiff and its counsel [Doc. No. 11]; 2) a motion to consolidate this case with two others pending before this Court [Doc. No. 24]; 3) a motion for a conference with this Court to discuss "implied threats" made by Plaintiff's counsel [Doc. No. 26]; and 4) a motion to set aside an order granting Plaintiff additional time to respond to Defendant's opposition to the confirmation of the arbitration award [Doc. No. 29]. On January 28, 2011, this Court revoked Defendant's attorney's *pro hac vice* admission. The Court found that, because Defendant's attorney was not admitted to any federal or state court in the United States, she was

ineligible for admission *pro hac vice* in the District of Connecticut. The court subsequently struck all of the filings filed by Defendant's attorney, including the answer to the complaint and the above-referenced motions, and instructed Defendant to refile any pleadings or motions *pro se* that she wished to have considered by the Court. Although Defendant never refiled her stricken answer, she did file the pending motion to dismiss, which again raised the lack of personal jurisdiction defense because of improper service.[2] She also filed the pending motion to transfer and motions to recuse this Court and Plaintiff's counsel from the case. Given Defendant's decision to raise the defense in her answer, which was stricken, and her subsequently filed motion to dismiss, the Court concludes that Defendant has not waived the defense by filing motions that raise separate issues and otherwise litigating this case.

When a defendant raises an improper service of process defense, the plaintiff bears the burden of showing that service was proper. Dickerson v. Napolitano, 604 F.3d 732, 752 (2d Cir. 2010). Here, Plaintiff has not made any showing that service on Defendant, a citizen of Greece, was properly made. Therefore, this Court concludes that Plaintiff has not met its burden, and the motion to dismiss for lack of jurisdiction based on improper service is granted.

---

[2] In response to Defendant's requests for a hearing, a settlement conference with a para-judicial officer was scheduled for February 4, 2010 for this case and two related actions involving Subway and other franchisees in Greece. Although the conference took place, it appears that Defendant did not attend. Because she did not participate in the settlement conference, the conference cannot constitute waiver of the improper service of process defense.

## III. CONCLUSION

For the reasons stated herein, Defendant's motion to transfer to New York state court [Doc. No. 45] is **denied** and the motion to dismiss [Doc. No. 62] is **granted**.

SO ORDERED

Dated at New Haven, Connecticut, this  8th  day of August, 2011.

/s/

Peter C. Dorsey, U.S. District Judge
United States District Court